ALOHA CONSOLIDATORS INTERNA-
TIONAL et al., Plaintiffs,

v.

The UNITED STATES of America and In-
terstate Commerce Commission,
Defendants,

Harry H. Blanco & Co., doing business as
Mid-Pacific Freight Forwarders,
Intervening Defendant.

No. CV 74–2498–AAH.

United States District Court,
C. D. California.

June 13, 1975.

Handler, Baker & Green by Daniel W.
Baker, San Francisco, Cal., for plaintiff
Hawaiian Express Service, Inc.

Russell & Schureman by Carl H.
Fritze, Los Angeles, Cal., for plaintiffs

Aloha Consolidators International, Guam Freight Forwarders & Consolidators, Hawaiian Express Service, Inc., Honolulu Freight Service, Mid-Pacific Forwarding Co., Inc., and Pacific Freight Forwarding Co.

Thomas E. Kauper, Asst. Atty. Gen., Bruce B. Wilson, Acting Asst. Atty. Gen., Carl Lawson, Asst. Chief-Appellate Section, and John H. D. Wigger, Atty., Antitrust Division, U.S. Dept. of Justice, Washington, D.C., and William D. Keller, U.S. Atty., Dzintra Janavs, Asst. U.S. Atty., Los Angeles, Cal., for defendant United States.

Fritz R. Kahn, Gen. Counsel, I.C.C., Betty Jo Christian, Associate Gen. Counsel, Charles H. White, Jr., and Lloyd John Osborn, Attys., I.C.C., Washington, D.C., for defendant I.C.C.

Brian S. Stern, John Douglas Clark, Sr., Arlington, Va., and Michael I. Blaylock, Los Angeles, Cal., for intervening defendant Harry H. Blanco & Co., doing business as Mid-Pacific Freight Forwarders.

Before BARNES, Senior Circuit Judge, EAST, Senior District Judge,* and HAUK, District Judge.

## DECISION AND ORDER

### AFFIRMING ACTION OF INTERSTATE COMMERCE COMMISSION

HAUK, District Judge:

This action arises upon plaintiffs' complaint to suspend, enjoin, annul and set aside Orders of the Interstate Commerce Commission (hereinafter "I.C.C." or "Commission") which authorized Harry H. Blanco & Co., the intervening defendant, to operate as a freight forwarder of general commodities. Jurisdiction is predicated upon 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325; 49 U.S.C. §§ 17(9) and 1017(a) and (b); and 5 U.S.C. §§ 701–706. The Orders in question were dated May 21, 1973, November 2, 1973, and June 5, 1974, and are administratively final. A District Court of three judges, as required by 28 U.S.C. § 2325, has been convened pursuant to the provisions of 28 U.S.C. § 2284 and the designation of Chief Circuit Judge Chambers.

After trial and hearing during which full opportunity was given to all parties—plaintiffs, defendants and intervening defendant—to present their evidence, oral and documentary, their respective briefs and oral argument, the Court has taken the matter under submission and now renders its Decision and Order denying plaintiffs' application for a decree that the I.C.C. Orders be set aside and annulled, and dismissing plaintiffs' Complaint for review of said I.C.C. Orders.

### SUMMARY OF FACTS

By application filed on February 17, 1971, Harry H. Blanco & Co., (hereinafter "Blanco") sought a permit authorizing operations as a freight forwarder [1] of general commodities in interstate commerce. Protests were filed by each of the plaintiffs in the case at bar and

---

\* District of Oregon, sitting by special designation of the Chief Judge of the Ninth Circuit, The Honorable Richard H. Chambers.

1. The term "freight forwarder" is defined in 49 U.S.C. § 1002(a)(5) as follows:
 ". . . any person which (otherwise than as a carrier subject to [parts I, II or III] of this title) holds itself out to the general public as a common carrier to transport or provide transportation of property, or any class or classes of property, for compensation, in interstate commerce, and which, in the ordinary and usual course of

its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, and performs or provides for the performance of break-bulk and distributing operations with respect to such consolidated shipments, and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to [parts I, II, or III] of this title."

by D. C. Andrews International, Inc.,[2] all of which are surface freight forwarders holding permits issued by the I.C.C. The case was ordered to be handled under the Commission's modified procedure rules[3] whereby all evidence was submitted in the form of verified statements (i. e. affidavits).

Pursuant to that Order, Blanco submitted opening verified statements[4] to which protestants replied. Blanco's evidence described the nature and extent of its operations, which were originally commenced as early as 1953 and which substantially corresponded to the authority requested by the application. Blanco's application was supported by some 19 shippers who had utilized Blanco's services and who urged that those services continue to be available to them. Protestants' evidence sought to establish that their own services were adequate and that Blanco's past operations had been conducted in wilful violation of the law. A late-filed rebuttal statement by Blanco was rejected by the Commission.

By Report and Order issued on May 21, 1973, the Commission's Review Board No. 3, a three-member Board, found that a grant of substantially all of the authority requested by Blanco would be consistent with the public interest and the national transportation policy. Thereafter, protestants filed petitions for reconsideration of that Order. Those petitions were denied by Order of the Commission on November 2, 1973, at which time the proceedings became administratively final. Accordingly, by I.C.C. Permit and Order issued on June 5, 1974, Blanco was authorized to operate as a freight forwarder of general commodities, with certain limitations not decisive or pertinent in this judicial review. And, on August 27, 1974, this action was instituted.

## ISSUE INVOLVED

The sole issue for this Court's determination is whether these three I.C.C. Orders granting Blanco's application for a freight forwarding permit were erroneous, unlawful, arbitrary and capricious, and unsupported by substantial evidence.

## SCOPE OF REVIEW

■ The position has been consistently taken by the Federal courts that orders of the I.C.C. should not be set aside, modified or disturbed by judicial review if they are supported by findings which are neither arbitrary nor capricious and are adequately sustained by substantial evidence in the record as a whole; and there is a rational basis for the administrative conclusion. Illinois C. R. Co. v. Norfolk & W. R. Co., 385 U.S. 57, 69–70, 87 S.Ct. 255, 17 L.Ed. 2d 162 (1966); Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 95 S.Ct. 438, 42 L. Ed.2d 447 (1974); Transportation Unlimited of California, Inc. v. United States, 300 F.Supp. 474 (C.D.Cal.1969); and Allied Van Lines Co. v. United States, 303 F.Supp. 742, 746 (C.D.Cal. 1969). However, while the scope of judicial review is limited, the Court must thoroughly review the administrative record to properly determine whether the I.C.C. has fully complied with the applicable standards mentioned hereinabove. Having exhaustively examined and considered the administrative record herein, as well as the pleadings, both oral and written, we find that the factual determinations made by the I.C.C. are supported by substantial evidence; that the grant of a freight forwardiing permit to Blanco was not arbitrary, capricious or an abuse of discretion; and

2. D. C. Andrews did not join in the suit herein.

3. *See* 49 C.F.R. § 1100.45.54 (Dec. 20, 1967).

4. Blanco also renewed its earlier petition for dismissal of the application upon the ground

that its operations were not those of a freight forwarder and not within the Commission's jurisdiction. This petition was denied by the Commission on May 21, 1973.

that there was a fully rational basis for the I.C.C.'s conclusion.

## DISCUSSION

 The Commission found that since 1965, Blanco has been engaged in the business of a non-vessel operating common carrier (NVO) under the authority of the Federal Maritime Commission, although it is conceded by all the parties that during that time Blanco was operating as an unlicensed freight forwarder as well. Plaintiffs' main argument is that in granting the freight forwarding license, the I.C.C. has wrongfully legitimized Blanco's *past* activities. They also argue that the I.C.C. should not have considered these activities to determine a *present* need for Blanco's services.

Traditionally, the I.C.C., in granting freight forwarding licenses, has considered evidence of past operations only in cases where the applicant had a "color of right" or "reasonable claim of right," and not when the carrier was operating in wilful disregard of the law. The evidence clearly shows, however, that although Blanco's past operations as a freight forwarder were illegal, it did operate in *good faith* and under a "color of right," as the Commission concluded in its Report of May 21, 1973, at p. 10. Blanco was warned by the I.C.C. sometime in December 1970, that it must apply for a freight forwarding license. This it did with reasonable dispatch on February 17, 1971.

More significantly, the law regarding the necessity of applying for a license from the I.C.C. for operations similar to those of Blanco's was in a state of uncertainty throughout the years that Blanco had operated without an I.C.C. permit. At the time, the controversy involved the extent of contact necessary before an NVO could be said to "utilize" a "Part II motor carrier" within the meaning of 49 U.S.C. § 1002(a)(5). This controversy affected the legality of the inland operations of numerous NVO's, including Blanco, which held no

authorization from the I.C.C. This controversy was resolved in IML SeaTransit, Ltd. v. United States, 343 F.Supp. 32 (N.D.Cal.1972), *aff'd sub nom.* Interstate Commerce Commission v. IML SeaTransit, Ltd., 409 U.S. 1002, 93 S. Ct. 433, 34 L.Ed.2d 295 (1972), which was decided by the District Court on April 21, 1972. The District Court held that whenever there is a "substantial commercial connection" between an NVO and a Part I, II, or III carrier, the NVO is operating as a freight forwarder and must have I.C.C. authorization.

This ruling came more than a year after Blanco filed its application with the I.C.C. on February 17, 1971 shortly after receiving a warning from the Commission that it should obtain authorization. In other words, even though the law was in a state of flux as to whether Blanco was required to obtain an I.C.C. freight forwarding license, Blanco still observed the Commission's warning and filed an application. If anything, this evidence substantially shows that Blanco was operating in *good faith* and *not* in total or wilful disregard of the law. The Commission therefore properly considered Blanco's past operations, which were conducted under a "color of right," to establish a present need for services. Such consideration was in keeping with the Commission's own standards and therefore was not arbitrary or capricious.

Once having established that Blanco's prior operations were conducted under a reasonable claim or color of right, the Commission properly considered those operations in conjunction with shipper testimony on the continuing need for those services and of anticipated increases in traffic. The relevant criteria to be used in determining the present need for services are found in 49 U.S.C. § 1010(c) which provides in pertinent part:

". . . that the proposed service, to the extent authorized by the permit, is or will be consistent with the

public interest and the national transportation policy declared in this Act . . . .."

This standard was interpreted by the Commission in D. C. Andrews & Company of Illinois, Inc., Extension-Baltimore, Md., 326 I.C.C. 743, 755 (1966) as follows:

"The 'public interest' criterion is therefore not the equivalent of the 'public convenience and necessity' test; rather, it is a somewhat less stringent standard which admits of public interest factors other than that relating to the adequacy or inadequacy of existing services. As was recently stated in the *Dow* case [Frank P. Dow, Extension-Longview, 322 I.C.C. 103 (1964)], *we may grant new or additional forwarder authority even though existing service is adequate,* provided such a grant of authority is supported by proof of a public interest factor of equal or dominant importance." (Emphasis added).

■■ In the instant case, the Commission found that the traffic to Pacific ports had been increasing so substantially that authorization of additional freight forwarding services would be justified. (*See* the Commission's Report and Order of May 21, 1973, at p. 10). Furthermore, the Commission found at p. 10 that:

"The protestants [plaintiffs herein] have not shown that they would be materially adversely affected by the continued competition of applicant, which has amply demonstrated that it is presently an effective competitor of protestants."

The only adverse affect that plaintiffs have shown is that Blanco's operations have brought and might in the future bring about additional competition for the increasing traffic in Pacific ports. Surely plaintiffs cannot seriously claim a vested right protecting them from normal and healthy business competition. As the Supreme Court recently stated in Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974):

"The Commission's approach, on the other hand, was more congenial to new entry and the resulting competition. This is the Commission's prerogative in carrying out its mandate to insure 'safe, adequate, economical, and efficient service' . . . .. It could conclude that the benefits of competitive service to consumers might outweigh the discomforts existing certificated carriers could feel as a result of new entry. Our decisions have dispelled any notion that the Commission's primary obligation is the protection of firms holding existing certificates."

## CONCLUSION AND ORDER

Accordingly, we feel compelled to conclude that the Commission has not abused its discretion. Nor has it acted arbitrarily, capriciously or contrary to law. Moreover, it is abundantly clear that the findings of the Commission have a fully rational basis and are supported by substantial evidence.

Plaintiffs' application for a decree setting aside and annulling the Report and Order of the I.C.C. dated May 21, 1973, as well as the Orders of November 2, 1973 and June 5, 1974, is hereby denied, and the Complaint for review is hereby dismissed.

The foregoing Decision and Order shall constitute the findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure.